Third case that I call today, agenda number three is 129-356, people who reside in the state of Illinois v. Earl Ratliff. Counsel, you are prepared to proceed. Good morning, your honors. May it please the court. My name is Ann Brenner. I'm with the Third District Office of the State Appellate Defender here on behalf of the defendant appellant, Mr. Earl Ratliff, in this case. Today we ask the court for two things. One, to find that the circuit court committed second-pronged plain error when it failed to comply with Rule 401A and this court's finding in people v. Haynes by virtue of failing to personally address Mr. Ratliff in open court at the time that he informed the circuit court that he wished to proceed without the aid of counsel. And two, having found such, we ask this court to vacate Mr. Ratliff's conviction and to remand for a new trial. Illinois Supreme Court Rule 401A requires that any waiver of counsel must be done in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first personally addressing the defendant by informing him of and determining that he understands the following three principles. One, the nature of the charge that he faces. Two, the minimum and maximum sentence prescribed by law, including any sentence which may result because of his criminal history or consecutive sentences. And three, that he has a right to counsel and should he be found indigent, he has a right to have counsel appointed for him. The facts of this case, pertinent ones anyway, are straightforward and I can be brief in reciting them. Per the state's factual basis here, Mr. Ratliff was in a slot machine room at a Roan Granger gas station in LaSalle County, Illinois with the victim. He followed the victim out of the gas station to the parking lot where he initially asked her for a ride and she declined and then he grabbed her purse off of her shoulder. In attempting to get away from her, he pulled her down to the ground. She attempted, obviously, to maintain control of the purse. He was able to get it free of her and made off with it. The purse contained an iPhone, two wallets, some U.S. currency, some jewelry, and various miscellaneous personal items. This occurred in April of 2019 and Mr. Ratliff was arraigned on April 24th, 2019. At the arraignment hearing, he was admonished that he was facing one count of robbery, a Class 2 felony. He was Class X eligible by virtue of his criminal history, so he faced a minimum of six years, a maximum of 30 years imprisonment. He was told that he had a right to counsel and he was found indigent and actually appointed counsel at that arraignment hearing. So counsel, at arraignment, he did receive all of the required 401A admonishments, is that right? Yes and no. He did receive the information that's required of Rule 401A, but the plain letter of the rule requires that those admonishments be given. It wasn't contemporaneous. It was not contemporaneous, correct. So he got all the information, but it wasn't at the time that he was contemplating waiving his right to counsel. Exactly, exactly. There's nothing in the rule that says it must be done at a certain time, though, correct? Well, the rule does say, the wording of the rule indicates that what triggers those admonishments is the defendant's attempted waiver. So it isn't until the defendant attempts to waive his counsel that the court is supposed to pause, not permit that waiver, and then give him the admonishments. So at that very time, he's considering the full ramifications of giving up this fundamental constitutional right. He didn't waive his right to counsel at the arraignment. Correct. He actually was appointed counsel at arraignment, yes, correct. And so 11 weeks later, on July 11, 2019, he appeared before the court, before a different judge, and at that time informed the court that he wished to proceed without the aid of counsel. The court inquired about his education level, his history with the criminal justice system, and his mental health. He responded that he had a ninth grade education. He said he did not have any experience with the criminal justice system, although we know from the record that's not true. And he indicated he had been diagnosed at one point with bipolar disorder. The court clarified that he was asking more about any testing that may have been done on his comprehensive skills, and he responded that he had not been sub-tested. Then the court asked him if he was being threatened or forced in any way to proceed without the aid of counsel, and Ratliff responded that yes, he was being forced. He said his counsel, who the court had appointed, had come to him and threatened him with 22 years. Counsel spoke up and said this was actually part of plea negotiations. The state communicated to me that they would offer a maximum sentence of 22 years, and it was standard attorney-client communication to relay, you know, it was my responsibility to relay that information to my client. So it was in no way intended to be a threat. As a result, the court found that Ratliff, Mr. Ratliff, was not being forced or threatened. However, it's not at all clear from the record that Mr. Ratliff believed he was not being threatened at that point. The court also did admonish Mr. Ratliff at that July 11 hearing that the court itself would not be giving him any special consideration, any legal advice, just by virtue of his going pro se. Particularly pointed to the prosecutor and said his job is to convict you. He's not here to help you. And he also, the court also informed Mr. Ratliff that he could not expect any special favors as far as court deadlines. He reinforced that, the judge reinforced that the court was there to implement the law and make sure that the rules of the court were followed. And also he indicated that the judge indicated that Mr. Ratliff should not expect any special favors on appeal simply because he had gone pro se throughout the trial proceedings. The case did proceed for over the next three months. Mr. Ratliff filed upwards of 10 different motions, many of which were superfluous, redundant, and often in conflict with one another. And then in November, they had a trial date set. They went through a full day of voir dire. A full jury was impaneled. And at the close of that day, Mr. Ratliff approached the state and offered to plead guilty. The following morning, they allowed the jurors to go home. And he entered a blind plea and ended up getting a sentence of 15 years and three years of mandatory supervised release. And during that hearing, the court did, in fact, advise him of the nature of the charges and the potential sentences, et cetera, correct? That is correct, Chief Justice. At the guilty plea hearing, the court did inform him of the nature of the charges, the minimum and maximum, and also that he had rights counsel a few pages later in the transcript. However, it's our position that everything from that failed admonishment, that failed 401A admonishment at that July 11th hearing tainted everything that followed from there. Explain that to me. I mean, when you say tainted, certainly you're not arguing that anything that took place in that interim period where he was filing motions, et cetera, that just somehow any orders the court entered or whatever were void, nothing that took place in that period are you arguing was inappropriate, correct, until the plea? We're not arguing that there were any errors that we are seeking review during that period, but it is painfully clear from his pleadings that he had a trial strategy. He wanted to challenge the state's evidence. Specifically, he wanted to... He knew what the charge was. These motions show he understood the charge. Well, and that's consistent with what the state is arguing and also what the appellate court found, certainly that it was harmless error because he knew what the charge was. He also was appointed counsel, so obviously he knew that. But if you look a little bit closer at his pleadings, you see he didn't fully understand the charge of robbery because he attempted to argue that he did not actually harm the victim. He believed that if he could show that he didn't harm the victim, cause her any physical harm, and he wanted her medical records to show that, then the state would not be able to prove him guilty of robbery. When, in fact, the robbery statute, that element, it could be either physical harm or the threat of physical harm. So the mere threat alone could have satisfied that element. But you're not suggesting that before he was allowed to waive the right to counsel, the court should have discussed with him the elements and the possible defenses, etc.? Are you suggesting that's what's required here? No, I'm not suggesting that. I'm suggesting that it simply says, the rule simply says the nature of the charge. So, yeah, of course, I agree with you. They would not likely go into the elements of the charge. They would say a class 2 felony robbery. So from the time that counsel withdrew and he continued to represent himself, through that whole period, you're not suggesting that anything inappropriate occurred, I think? But obviously, what you're concerned about is the conviction after there was a plea of guilty, right? Well, to the extent... That's the significant event. That's a part of the significant event. I mean, obviously, the conviction is the major, the most grievous effect of having waived counsel. But everything from the point that he informed the court that he wished to go without counsel and actually believed that he was being forced into that position, it's not at all clear that he understood he had a constitutional right to have counsel throughout this proceeding. And so everything he attempted to do, it would have gone much smoother had he had counsel and had he understood that his counsel was not threatening him. His counsel was there to assist him. And because those admonishments were not given at the time required of the rule, we don't know for sure whether he actually made a knowing and intelligent waiver. It was the court's job at that point to ensure that... And this court has said that. And then after the plea, he asked for counsel. He understood that he could ask for counsel, right? Yes. And that is another point that the appellate court brought out in its opinion, again, finding harmless error, because not only did he mention the charge in his pleadings, he also exercised his right to counsel. But it's key that at that guilty plea hearing, he was told he could have counsel. And then after pleading guilty, he continuously attempted to negotiate a plea with the judge by writing directly to the judge, not to the prosecutor. And at one point, he filed a motion attempting to bond out so that he could return to work, work for a couple of weeks, save up enough money to then hire counsel to assist him in what he thought would be his trial. And the court had to explain to him, you're not going anywhere, and you don't have that option. You don't even have a bond at this point, so you won't be hiring counsel. But I will be happy to appoint counsel for you. So again, a second time, after the plea, he was notified that he could have counsel appointed. And at that point, he took it. He immediately accepted counsel. So while the appellate court found, as you stated, that he did invoke his right to counsel, it must be recognized that he actually was admonished prior to the invocation of that right. So our case law has been consistent that substantial compliance with Rule 401A requires admonishment at the time that the defendant announces in open court that he wishes to waive counsel because it's such a fundamental constitutional right that the rule is designed to safeguard that constitutional right. This court found such in Ains in 1996. More recently, the third district from which this case arises, in Dyess, found the same. In Giles, Giles is often quoted in these cases as saying that the admonishments must occur at the time, and sometimes it's even in italics, to stress that it must be at the time that the defendant waives counsel. Langley, Stoops are some additional cases. And then critically, just since the briefs were filed in this case, the second district found in Anderson that merely a delay of 26 days is too great a rift between admonishments and the actual waiver of counsel in the court. And just to be clear, the temporal relevance, excuse me, is critical here. Again, by the plain language of the rule, the defendant's announcing in open court his desire to proceed without counsel is what triggers those admonishments. So any admonishments that precede that are ineffective and insubstantial. And the temporal relevance is analogous to Miranda rights. We would all recognize, I think, that it would be inappropriate to give Miranda warnings 11 weeks prior to the initiation of an interrogation. With regard to Rule 402, the guilty plea hearing admonishments, it would be inappropriate to assume that admonishments regarding the rights you're waiving at the time you plead guilty are sufficient if given at the arraignment hearing. And likewise, Rule 605, the rights on appeal and instructions as to how to perfect your appeal and not blow the deadlines, must be given at the sentencing and not two and a half months prior to sentencing. Counsel, is it your position that we're not only looking at the time between the giving of the admonishments, but we need to also consider whether at the time the admonishments were given, the defendant was contemplating waiving his or her right to counsel? Exactly, exactly. And that is exactly what the Haynes case says. Haynes is a tricky case because the defendant was admonished and began considering, he was considering then whether or not to waive counsel, but because he had to undergo a fitness hearing, he was not declared fit, and thus he was not declared fit to waive counsel until several, a bit down the road. And so it wasn't until he was actually declared fit that he actually did waive counsel, but this court found that those admonishments were sufficient, were substantial because he had actually, the defendant had actually been considering waiving counsel at the time that they were given, and because he was found fit. Of course, if he had been found unfit, then that waiver wouldn't have been sufficient. May I ask you a procedural question about this case? Absolutely. He then, after he pleaded guilty, he was appointed counsel. He asked for counsel, he got counsel. Correct, correct. Were these issues raised before the trial court? No, they were not. They were not. He filed pro se before counsel was appointed for him, several motions to withdraw the guilty plea. Then through counsel, as the state notes, he withdrew those and filed a motion to reconsider sentences. In the court below, we did argue an effective assistance to counsel. We have not brought that claim before this court. Let's be clear. We're talking about plain error? Yes. Because he had an attorney. He had an attorney right there, right in the middle of all this. He's in, he's out, he's going to go to a trial, he's going to plead guilty, he's going to withdraw his pleas, he's going to challenge a sentence. At that point, he had a lawyer, and the lawyer never raised any of these issues, correct? Correct. That's correct. And the reason it didn't bring the ineffective assistance claim before this court is because the appellate court reached the case on the merits. It didn't even address our claim of ineffective assistance. So we asked this court to review the court's findings on the merits and review for second form plain error. The appellate court did review this issue under plain error. However, as I mentioned earlier, they found harmless error because they found that those admonishments at arraignment were sufficient. And additionally, we believe they had some flawed reasoning in finding that his waiver was annoying and intelligent. And one other key point on that is that the appellate court rested largely its decision on Roberts' case from 1975, which actually refers to an older version of Rule 401A, which at that time had to do with waiver of indictment, not waiver of counsel. So I see that my time is running short, and I will reserve the remainder for rebuttal. But I just want to reiterate, again, we asked this court to find second form plain error where the circuit court failed to substantially admonish Mr. Roberts in accordance with 401A. Thank you. Thank you. Counsel? Good morning, Your Honor, Counsel. My name is Assistant Attorney General Matt Skiba, representing the people. Defendant exercised his constitutional right to self-representation and subsequently pleaded guilty. And though he initially moved to withdraw his guilty plea while still pro se, he then went through that motion through counsel and twice disclaimed interest in withdrawing his guilty plea. Then, for the first time on appeal, he claimed that his waiver of his right to counsel was invalid under Rule 401 and sought to vacate his conviction. This court should reject Defendant's 401 claim for three reasons. First, because he did not properly move to withdraw his guilty plea, the appellate court lacked authority to consider the merits of his claim under Rule 604D. Second, even if the appellate court did have the authority, the fact that Defendant disavowed any interest in withdrawing his guilty plea through counsel constitutes a waiver that bars even plain error review. And third and finally, as my friend on the other side notes, at most this is a second-pronged plain error case. And the failure to give Rule 401 admonishments at the precise hearing where Defendant decides to waive counsel is neither a clear error nor a second-pronged plain error. With the court's permission, I'd like to touch briefly on the threshold procedural questions before turning to the Rule 401 merits. As I noted, the appellate court lacked authority to pass on the merits of the Rule 401 claim because Defendant did not properly move to withdraw his guilty plea and therefore Defendant failed to satisfy the conviction precedent requirements to appeal this conviction. As this court has said in flowers and in wilk, really the appellate court only has two options at that point. One is to remand if there's some Rule 605 admonishment issue that Defendant does not raise here or to dismiss the case. And that's the route that it should have taken here. My friend notes that, argues that the state had forfeited this issue because it did not alert the appellate court to the Rule 604D issue below. And it is true, we did not press this in our briefs below. But this is not a doctrine that is subject to forfeiture. The appellate court's authorities are only shaped by this court's rules. In fact, in wilk, the state had acquiesced to a remand that wasn't even on 605 grounds. The appellate court had dismissed the appeal sui sponte and this court said in wilk that that was the proper route to take. But again, even if the appellate court did have the authority, even setting aside the lack of authority under the condition precedent requirement, again, Defendant twice said through counsel that although he had filed a motion to withdraw his guilty plea, he did not want to withdraw his guilty plea anymore. In fact, at page 298 of the record, I think the fairest inference from the record is that the Defendant's decision not to withdraw his guilty plea was the product of Defendant's advice. That he did not want to withdraw his guilty plea anymore and only sought to reconsider his sentence. In fact, pretty tellingly at page 222 of the C-222, the notice of appeal only identifies the motion to reconsider sentence as the judgment appeal from. But as my friend concedes, at most this is a second-pronged plain error case. So I'd like to start with the first inquiry that Defendant needs to establish a clear and obvious error. And it's important to note that Defendant only raises a rules-based claim. He doesn't raise a constitutional claim that his waiver was in fact a constitutional matter, unknowing or unintelligent. And really his claim boils down to a claim that the failure to admonish Defendant under Rule 401 at the exact hearing where he waived his counsel is clear and obvious error. But as my friend notes, at the arraignment, as Rule 401 requires, Rule 401 requires that Defendant be informed of the nature of the charge, the sentencing exposure, the right to counsel, and the right to appoint a counsel. And at the arraignment about two and a half months before Defendant waived his right to counsel. Was the Defendant making any motion or discussing wanting to appear pro se at the arraignment hearing? No, Your Honor, he wasn't. He did file an affidavit and sought appointed counsel because of his indigency. So, candidly, Your Honor is correct. So how do you reconcile your position with Haines? So Haines is a different case. Haines, I think my friend on the other side relies on dicta in Haines, but there are sometimes going to be instances in which a gap between the admonishments and the waiver of the right to counsel renders the waiver invalid. But this Court noted in Haines that it was not establishing any sort of per se rule that the admonishment needs to always be given at the time that a Defendant first expresses any interest in waiving his right to counsel. In fact, Haines was a pretty similar time interval, about 80 days here. I think we have 78 days between the time the admonishments were given and the ultimate waiver. It's also important to note, as my friend on the other side notes, that there was a four-day fitness hearing between at the end of that 80-day interval. But weren't, in Haines, weren't those admonishments given as a result or in conjunction with the Defendant making his statement to the Court that he wanted to do a pure pro se? That's correct, Your Honor. So there's one factual distinction between Haines and this case. It's important to note that Rule 401 serves a purpose, and that is to ensure that at the time that a Defendant waives his right to counsel that he makes a knowing and intelligent decision, which is not to suggest that it's a wise decision. In fact, it's almost never wise. But the purpose of the rule is to ensure that he be informed of the consequences of his decision. So although it's, again, an unwise decision, it's nevertheless made with eyes open for all the consequences of that decision. You're right that in Haines, the Court said that we basically have to look at the particular facts of each case and that there's not a hard-line rule that if the admonishment is not given at the time the Defendant is contemplating waiving counsel, it's not automatically improper. But what is it about this case, the particular circumstances in this case, that we should hold that it's okay that the admonishments were given prior to and at a time that the Defendant was not considering waiving counsel? So I think there's two crucial facts on this point, Your Honor. The first, as we touched on, is the time interval, roughly the same as Haines, 78 days versus 80 days. I think the other important piece of this is that this was the first hearing after the arraignment, after the time in which the substance of Rule 401 was conveyed. So as this Court noted in Haines, this Court cited Langley as an example of the outer limits. I think there's a seven-month time interval there. But it's important to note that the arraignments of Langley in this Court's dictum in Haines didn't suffice because there was a full-blown jury trial between the arraignment and when the Defendant waived his right to counsel at the sentencing hearing. So this Court thought and dicted that that was sort of the outer limits, maybe an instance in which either the time lag was too great or that there was too much intervening circumstances here. So again, in short, both the length of time as well as intervening developments. Counsel, so your stance is that it doesn't matter that the Defendant was not admonished about the nature of the charges at the same time that he requested to represent himself, as long as he was admonished at some point in time? So, Your Honor, it's certainly preferable that the trial court read Rule 401 to the letter at the exact hearing that a Defendant expresses interest in waiving his right to counsel. But it's certainly not clear or obvious error to do so, at least under the facts of this case where we have a relatively short time interval and no intervening circumstances. Well, right now, in this case, it was three months. Is there some specific time cutoff that you're thinking? What if it was six months? So certainly there's going to be harder cases on the margins. Certainly this isn't one of those cases. Again, just looking to the dicta in Haynes, this court said in Haynes that perhaps seven months is too great of a time interval. There's going to be cases on the margins where it's going to be a little bit different than the facts here, but that's certainly not the case that we have. But it's also important to note, even if this court did require contemporaneous admonishments at the precise hearing where a Defendant waives his right to counsel, that does not constitute second-pronged plain error, which, as this court said in Jackson, is structural error. And to define it a little bit more specifically, what this court in Jackson said is that a second-pronged plain error and a structural error is a constitutional error that defies harmless error standards. And a Rule 401 claim fails out the gate because Rule 401 is not a constitutional rule at all. It's a prophylactic rule that is merely one safeguard for the constitutional right. So I would point this court back to Glasper, Thompson, and Jackson, where this court looked at conceivably mandatory rules and examined those rules and found that even though as a matter of state law they are mandatory, because they are just a prophylactic to ultimately safeguarding a constitutional right, that does not constitute second-pronged plain error. And I think Glasper and Thompson, I think, illustrate an important point. This court said that for the Rule 431, there are principles safeguard to prevent a biased jury. This court noted that a biased jury would be structural error, but the failure to give the 431 admonishments or the Zer principle does not, in fact, result in a biased jury, so it's not second-pronged plain error. And just taking a step back to really explain the difference between what Rule 401 requires and what the constitutional standard requires, I think the simplest way I can put it is Rule 401 is solely concerned with what the trial court said. The constitutional standard depends entirely on what the defendant knew, and I think there's an important distinction there, because you can imagine an instance in which a trial counsel advises a defendant of the nature of the charges, the sentencing exposure, and his right to counsel and appointed counsel. Perhaps even, I don't know the facts of this case, but 30 minutes before the hearing where a defendant waives his right to counsel. So certainly the constitutional standard that he knew of those three factors is met, even if the trial court said nothing. And as the U.S. Supreme Court said in Iowa v. Tovar just about 17 years ago, the constitutional standard does not require any particular script or rigid formula. It's important. The constitutional standard depends on whether the defendant made his choice with his eyes open about the consequences of his decision. So as numerous courts of appeals have noted, a sort of formal hearing or colloquy, courts call it a phoretic hearing, really provides one tool, provides probably the best tool so that we can make a record about what the defendant knew and when he knew it. Counsel, what evidence can you point to to highlight that he understood? Of the Rule 401 substance. So about a week after a defendant waived his right to counsel, he filed a pro se motion that acknowledged that he was charged with a Class II robbery. He also acknowledged the factual allegations from the state that it involved the theft of an iPhone and some other effects. So that's pretty clear contemporaneous evidence that he knew of the nature of the charges. What about sentencing? So sentencing, in addition to what he was told at his arraignment. I'm wondering what evidence do you point to to suggest that he understood not only the charge, but the sentence that could possibly flow from that charge? Certainly. So at the hearing where he waived his right to counsel, the fact that he expressed to court that his attorney had threatened him with 22 years, which in fact, as my friend notes, was really just discussing the terms of a plea offer. Presumably what a defense counsel told him is the pros and cons of certainly accepting a 22-year plea that could include up to 30 years, as the trial court noted at the arraignment. And certainly if you roll the dice and go to trial, you could be facing considerably more than 22 years. But his statement doesn't indicate that he understood that his counsel wasn't threatening him, just explaining to him. But his statement doesn't make that clear, does it? Well, I think that the way that the trial court looked at it is the trial court looked at this in reference to other cases. The trial court said, OK, so what you're really telling me, Mr. Ratliff, is your attorney said something that you didn't like. So I think that's the way that the trial court interpreted it. I don't think there was a fundamental misunderstanding about the sentencing exposure that the defendant was facing. But we don't have any way of knowing that based on what he said in court on the 11th of July. Certainly, Your Honor, we don't have a perfect insight into what the defendant knew and when he knew it. And part of the reason we don't know that is because of the fact that the defendant, although, again, filed a motion to withdraw his guilty plea per se, he withdrew that motion through counsel. So to the extent that he wanted to develop a factual basis about what he knew and when he knew it, the fact that the defendant withdrew his motion to withdraw a guilty plea, the trial court couldn't make a factual record about what he knew and when he knew it. But just turning back briefly with the time remaining, the difference between Rule 401 and the constitutional standard, Rule 401 provides a one-size-fits-all set of admonishments that a defendant needs to be warned of when he goes per se. The constitutional inquiry depends on the totality of the circumstances, considers the stage of the proceedings, so what a defendant needs to know if he wants to plead guilty versus if he wants to represent himself at trial, at sentencing. All of those stages has a different constitutional framework. Defendant's criminal history, as we note in our brief, the defendant has a 40-year record. He invoked his right to counsel numerous times. Certainly, as this court noted in Johnson, I believe, that criminal history gave him lots of time to be acquainted with the right to counsel. Complexity of the charges is another piece of the inquiry on the constitutional standard. And finally, briefly, I would just note that although Rule 401 is not a constitutional rule, it also doesn't escape harmless error analysis. In fact, as this court's substantial compliance test really bakes in, once the court finds substantial compliance, the next question is whether the waiver was ultimately otherwise knowing and intelligent. So that, I think, underscores why harmless error analysis is appropriate here. This court has no further questions. We've asked that this court dismiss the appeal, but short of that, affirm. Thank you. Thank you very much, counsel. Counsel, you may reply. Thank you, Your Honors. So just initially, I want to respond to the state's comments with regard to forfeiture in 604D. As the state acknowledged, they did fail to bring this issue up in the appellate court, so they have forfeited the issue. Of course, that's in our briefs as well. I just want to point this court to this court's own finding in Whitfield, where they said it would be incongruous to hold one party to a certain forfeiture standard and not the opposite party. And that was echoed in Stewart in the First District Appellate Court, where they said it would be absurd to require that an individual lodge a contemporaneous objection to the absence of admonishments, which are designed to safeguard the right to counsel. How can you object to something when you're not even the objection is related to the fact that you haven't been informed of the information? Because we're talking about the proceedings that took place after he was appointed counsel. He pled guilty. Yes. He filed a document saying he wished to withdraw his plea. Counsel was appointed, and counsel came back and said, now he no longer wishes to withdraw his plea. He's only looking to discuss his sentence. Correct? So now he has counsel. Correct. The whole issue about is this issue preserved, how did we get here, you know, procedure stuff is kind of not as interesting perhaps as these other issues. But procedurally, how did we get here? He had a lawyer who said we don't want to he does not want to withdraw his plea. He doesn't want to go back. No matter what happened. Back there. He doesn't want to go back there. He wants to talk only about his sentence. Don't we have to somehow factor that in? Certainly, I would expect the court to consider it, and it's been briefed. What I would say is that under Rule 604, the post-plea counsel is required to review the transcript of the plea hearing, the guilty plea hearing, excuse me, the guilty plea hearing and sentencing hearing, and then the common law record. So there's an open question as to whether post-plea counsel would have even caught the fact that admonishments were not given in July. But more to the point, probably a stronger argument on our behalf is that the appellate court did reach the issue of merits. They found second-pronged plain error. We argue that it is second-pronged plain error because it's an error so serious that it affects the fairness of his, in this case, plea, generally trial, and it calls into question the integrity of the judicial process. So we ask, again, this court to find second-pronged plain error, which when issues are forfeited by virtue of second-pronged plain error, the court has the authority to review them. Additionally, we would ask this court to consider using its supervisory authority, particularly since the appellate court did reach the issue on merits. So could you talk to me about Haynes? Haynes is a really difficult case. It's a death case where ultimately the court upheld the death penalty in the case. And the issue about when ñ I mean, it must have been a very terrible, terrible case. There were fitness issues. The defendant wanted to represent himself. It was a very difficult case to end up with this court upholding the death penalty in that kind of case. And there there was a ñ the issue was raised that there was a number of months that took place between the time there were the admonitions and when he actually exercised his right to represent himself, right? And the court said in that case, well, every case is going to have a rising and falling on specs. And here in this very difficult case, in a death case, they said that was substantial compliance. They did. And there were actually two components to the argument that the admonishments were insubstantial, because not only did they argue they were not timely, it was also argued by the defendant that one of the ñ you're right, it was a death case, but one of the underlying charges was burglary. And the court did not admonish the defendant with regard to the burglary minimum. But the court said when you're facing death, it's a death penalty case, it doesn't matter what the minimum is for burglary. He got the message. Wait, wait, wait. You're saying this court said because it was a death case, it really doesn't matter if you were properly admonished? No. Is that how you interpret the case? No, I'm sorry if I misspoke. What the court said was that because he was admonished that he was facing such a serious, the most serious penalty that's possible, it didn't matter that the court failed to admonish him with respect to the minimum on the burglary charge, because the point, again, of the admonishments is to get the defendant to consider, as in this case, you're facing three decades in prison. And that's why it's important that you consider whether you really want to waive counsel right now. In that case, you're facing the death penalty. So it doesn't matter that under the burglary charge you're facing a few years, you're facing the death penalty. So that's what the court found on that element. I guess I don't know that part about the court. Okay. The court is saying death is a big deal. And so even though we know you weren't properly admonished, we're going to go ahead and sentence you to death because the error here had something to do with burglary. Is that what they said? You're saying that the fact that they didn't get the admonishment on burglary really was impaled in comparison. Exactly. And that's the exact wording that they used, impaled in comparison. Exactly. But to put more to the point of your question, with regard to the timing of the admonishments,  at the time he initially was considering waiving counsel. However, because he had not yet been found fit, they couldn't allow him, the court couldn't allow him to waive counsel until they processed the fitness component. Once they did find that he was fit, they said, well, back when he was admonished, that was sufficient, and now he may waive counsel. And while this is a completely different hearing date, he has been considering the waiver that entire time. He's fully aware of the admonishments required by Rule 401A. He was fit at the time that he was admonished, so his waiver was good, and I think they referred to a rule of the continuity of the waiver. The waiver didn't end. It might have ended had he been found unfit, but he was found fit. Just quickly, I want to address the fact that the state would have you all find that this is merely a prophylactic rule and that it's not an actual constitutional right, but we argue that it certainly is a constitutional right. A finding that this is a prophylactic rule that merely safeguards a constitutional right but is not actually a constitutional right in and of itself is essentially a finding that this court's rule is discretionary, which means that finding harmless error means that Rule 401A is completely undermined. It eliminates the rationale for the rule. And then also, just quickly, with regard to knowing involuntary waiver, this court has said in Baker that where a court finds that the 401A admonishments were not substantial, the court's analysis need not go that further step to knowing involuntary. So if you find that the timeliness in and of itself renders the admonishments insubstantial and a violation of the rule, then you need not consider whether Mr. Ratliff's waiver was knowing involuntary in the course of your analysis. And let's see, just really quickly, if I have a moment. Okay. So I think with that, unless the court has any additional questions, I just do want to reiterate that we do believe this is a constitutional issue. We do believe that second-pronged claim error is impacted. It's an error so serious that it calls into question the integrity of the judicial process. Does it have to be a constitutional issue to constitute second-pronged claim error? No, it does not have to be. It merely needs to be an error so serious that it calls into question the integrity of the judicial system or the fairness of the defendant's trial. Thank you so much, Your Honor. Thank you very much. This is case agenda number three, number 129356, People of the State of Illinois v. Earl Ratliff. Thank you both for your arguments here. This case will be taken under advisory.